**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ZULMA BLANCO, MARIA ROJAS, LAZARO ) HERNANDEZ, JOHANA MARTINEZ, and ARLEN ) HENRIQUEZ CRUZ, *on behalf of themselves and all* ) *similarly situated individuals*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LEESBURG MANOR OWNER, LLC, LEESBURG ) MANOR EAST OWNER, LLC, and ) WESTMINSTER PILLAR MANAGEMENT LLC, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No. 1:24-cv-1045 |

## CLASS ACTION COMPLAINT

Plaintiffs Zulma Blanco, Maria Rojas, Lazaro Hernandez, Johana Martinez, and Arlen Henriquez Cruz, on behalf of themselves and all other similarly situated individuals, file this Class Action Complaint against Defendants Leesburg Manor Owner, LLC, Leesburg Manor East Owner, LLC, and Westminster Pillar Management LLC (collectively, "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

1.     This is an action for actual, punitive, and statutory damages, costs, and attorneys' fees for Defendants' violations of the Virginia Residential Landlord Tenant Act ("VLTA"), Va. Code § 55.1-1200, *et seq.*, the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196, *et seq.*, and the Virginia Fair Housing Law ("VFHL"), Va. Code § 36-96.1, *et seq.*, and for specific performance and damages for their breach of Plaintiffs' and the putative class members' lease agreements.

2.     Plaintiffs' claims stem from Defendants' discriminatory decision to impose and collect a $90-per-month "Media Service and Amenity" fee—or "Media Fee"—that purportedly covers internet and cable television for each tenant at the Manor Apartments and Manor East Apartments in Leesburg, Virginia.

3.     Notably, this fee was considerably higher than the actual costs to Plaintiffs and the putative class members for internet and cable outside of the involuntary fee imposed by Defendants.  Indeed, as Defendants were well aware, at the time they implemented the Media Fee, many tenants paid for their internet through subsidized programs for as little as $9.99 a month. These tenants were now forced to give up the subsidized benefits they were receiving and pay for internet through Defendants at a much higher price.  Conveniently for Defendants, the Media Fee was also much higher than the actual cost to Defendants for the services being provided, allowing Defendants to reap significant additional profits while Plaintiffs and their co-tenants, who are of limited income, paid for services they were already able to obtain for a much lower cost.

4.     Adding insult to injury, although Defendants expressly promised in the addendum ratifying the Media Fee to provide the "personal computers, laptops, tablets, mobile phones and television sets" needed to use the promised amenities, to date, Defendants have not provided any of this equipment, and for many tenants, they have not provided the actual internet and cable services either.  Defendants are thus taking $90 per month from Plaintiffs and each of their hundreds of co-tenants, amounting to thousands in additional profits, while providing none of the equipment or services that they promised.

5.     And when Plaintiffs and several other tenants decided to organize a tenant's organization and petition Defendants to eliminate the Media Fee or at least make it optional such that it would not discriminate against those with subsidized internet, Defendants engaged in a

series of retaliatory acts designed to intimidate and coerce Plaintiffs and their co-tenants into backing down, including: issuing non-renewal notices against those identified as part of the tenant's organization or who had complained about their discriminatory practices; threatening to force all those involved with any "lawyer" or this lawsuit to vacate their apartments; and refusing to assist or respond to tenants whom Defendants knew or believed were part of the tenant's organization or had complained about the Media Fee.

6. Faced with the ongoing threat of eviction and having been told that they will need to vacate their apartments in the next few months because of their attempts to assert their rights under Virginia law, Plaintiffs are forced to bring this lawsuit to seek relief for Defendants' ongoing violations of the VLTA, VCPA, and VFHL, and for their breach of contract.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiffs (Virginia) and Defendants (Delaware, New York, and New Jersey) are each citizens of different states and the amount in controversy is at least $75,000. Specifically, Defendants' conduct has caused Plaintiffs and the putative class members to each pay at least $720 in discriminatory Media Fees since they first started collecting the fees November 2023. The Manor Apartments have 198 units, while the Manor East Apartments have 164 units, meaning that Defendants have collected at least $260,640 in Media Fees to date. Notably, much of the collected amounts have been retained by the Landlord Defendants as profit, in violation of the VLTA. Defendants have also caused damages to Plaintiffs and the putative class members from their retaliation under VFHL, including significant emotional distress from eviction proceedings, non-renewal notices, and other harassment, which amounts are unliquidated and will be determined by a jury but at a minimum exceed $75,000 per individual. And Defendants' failure to provide computers, tablets, phones, and televisions to those tenants to whom it promised such equipment, and to further to not provide

the promised services themselves, has deprived each of the tenants of thousands of dollars in equipment and the value of the services for which they have paid $90 a month since November 2023. They are at a minimum entitled to statutory damages under the VCPA of at least $500 per month, or $1,000 per month for willful violations, for each month the Landlord Defendants failed to provide the promised services/devices. Va. Code § 59.1-204. As set forth below, Defendants' conduct has also been willful, which entitles Plaintiffs and the class members to treble damages under the VCPA (Va. Code § 59.1-204) and uncapped punitive damages under the VFHL (Va. Code § 36-96.18(C)).

8.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Division, where Plaintiffs reside and the Manor/Manor East Apartments are located.

## PARTIES

9.  Plaintiffs are each a natural person residing in this Division and District.

10.  Defendant Leesburg Manor Owner, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in New York.

11.  Defendant Leesburg Manor East Owner, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in New York.

12.  Defendants Leesburg Manor Owner, LLC and Leesburg Manor East Owner, LLC (collectively, the "Landlord Defendants") are each a "supplier" under the VCPA because they are each a "lessor . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes. Va. Code § 59.1-198. The Landlord Defendants are also each a "landlord" as defined by the VLTA, as they are each the owner and lessor of the dwelling units in their respective apartment complexes. Leesburg Manor Owner, LLC is the owner and lessor of the dwelling units in the Manor Apartments, of which

Plaintiffs Rojas, Hernandez, and Martinez are tenants. Leesburg Manor East Owner, LLC is the owner and lessor of the dwelling units of the Manor East Apartments, of which Plaintiffs Blanco and Cruz are tenants.

13.     Defendant Westminster Pillar Management LLC ("Westminster Pillar Management") is a limited liability company organized under the laws of Delaware with its principal place of business in New Jersey. Although owned by separate entities, the Manor/Manor East Apartments are advertised, operated, managed, and leased by Westminster Pillar Management on behalf of the Landlord Defendants. Westminster Pillar Management is the entity that collects the Media Fee on behalf of the Landlord Defendants, and it is liable under the VFHL for its own retaliatory conduct and the conduct of its employees on its behalf, as alleged herein.

<u>**FACTS**</u>

*Plaintiffs' Lease Agreements*

14.     Plaintiffs are residents of Northern Virginia from predominantly low-income, hardworking, immigrant families.

15.     Plaintiff Maria Rojas first signed her lease with Defendant Leesburg Manor Owner, LLC six years ago, which lease continued to renew on a yearly basis per the terms of the lease. Most recently, Ms. Rojas's lease renewed in July 2023 for an additional one-year term set to expire in July 2024. Ms. Rojas's lease terms prior to July 2023 did not include any disclosures of a Media Fee, while her July 2023 lease included a "Media Service and Amenity Addendum" that required her to pay $90 per month for the so-called "Standard Amenities," including internet and cable.

16.     Plaintiff Lazaro Hernandez first signed his lease with Defendant Leesburg Manor Owner, LLC four years ago, which lease continued to renew on a yearly basis per the terms of the lease. Most recently, Mr. Hernandez's lease renewed in July 2023 for an additional one-year term set to expire in July 2024. Mr. Hernandez's lease terms prior to July 2023 did not include any

disclosures of a Media Fee, while his July 2023 lease included a "Media Service and Amenity Addendum" that required him to pay $90 per month for the so-called "Standard Amenities," including internet and cable.

17. Plaintiff Zulma Blanco first signed her lease with Defendant Leesburg Manor East Owner, LLC in February 2023, which lease renewed in March 2024 for a one-year term set to expire in March 2025. Ms. Blanco's February 2023 lease did not include any disclosures of a Media Fee, while her March 2024 lease included a "Media Service and Amenity Addendum" that required her to pay $90 per month for the so-called "Standard Amenities," including internet and cable. The Addendum, like other addendums signed by tenants of the Landlord Defendants, also included the following provision that obligated her landlord to provide the equipment necessary for her to use the promised internet and cable services (the "Equipment Provision"):

> Lessor [Leesburg Manor/Manor East Owner, LLC, respectively] is responsible for obtaining all necessary personal reception devices and equipment needed to use the Standard Amenities, such as personal computers, laptops, tablets, mobile phones and television sets. Lessor acknowledges that the Lessee does not provide any of this equipment.

18. Plaintiff Johana Martinez first signed a lease with Defendant Leesburg Manor Owner, LLC in 2021. Her most recent lease renewed in October 2023, which is set to expire in October 2024 and included the same "Media Service and Amenity Addendum" and Equipment Provision as Plaintiff Blanco.

19. Plaintiff Arlen Cruz first signed a lease with Defendant Leesburg Manor East Owner, LLC in August 2022. Her most recent lease renewed in August 2023, which is set to expire in August 2024 and included the same "Media Service and Amenity Addendum" and Equipment Provision as Plaintiff Blanco.

*The Discriminatory Impact of Defendants' Media Fee*

20.     For years, Defendants never imposed or required the payment of any fees for internet or cable.   Instead, each tenant was responsible for their own internet and cable subscriptions on payment terms that they chose to incur based on their individual needs and budgets and their ability to receive governmental and nongovernmental assistance if necessary.

21.     Then, in the spring of 2023, Defendants announced plans to impose a $90-per-month "media package fee" that they had never previously collected or charged for internet and cable services.

22.     Defendants' motivations behind this fee were obvious: they could collect $90 per month from each of the hundreds of tenants at the Manor/Manor East Apartments while paying far less than that amount per tenant to the actual provider of the internet/cable services—in this case, Xfinity—who was already providing the services to unsubsidized tenants at rates as low as $55 per month.   Indeed, upon information and belief, the Landlord Defendants paid even lower per-unit costs for the internet and cable by purchasing it in bulk for the 362 units in the Manor/Manor East Apartments.

23.     Even assuming the Landlord Defendants paid the unsubsidized $55-a-month individual subscriber fee for the internet and cable services provided to each unit, they would still retain approximately $12,670 per month and $152,040 per year in pure profit from the Media Fee, in which Defendant Westminster Pillar Management shared.

24.     Instead of passing on the cost savings of paying for internet and cable in bulk, Defendants are now forcing tenants who were paying for unsubsidized, individual internet to pay at least an extra $35 a month and an extra $420 a year on their already limited budgets.

25.     But it was not just ordinary tenants whose bottom line was threatened by Defendants' decision; Defendants' surprise Media Fee had a particularly harmful and disparate effect on those who were receiving subsidized internet through governmental and nongovernmental assistance programs.

26.     Indeed, Plaintiffs Zulma Blanco, Johana Martinez, and Arlen Cruz were already receiving subsidized internet for $9.99 a month through Xfinity's subsidized program when Defendants started imposing and collecting the $90 Media Fee from Plaintiffs and the putative class members in Count One in November 2023.  This represents a nine-fold increase in the amounts these tenants are now required to pay for essentially the same services.

27.     Plaintiffs Blanco, Martinez, and Cruz and the other tenants at the Manor/Manor East Apartments who receive similar subsidized internet are now forced to pay $1,080.00 a year for internet that they could receive for less than $120.00 over the same period.

28.     Such conduct directly violates the Virginia Fair Housing Law, which prohibits landlords from discriminating "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith to any person because of . . . source of funds."  Va. Code § 36-96.3(A)(2).  "Source of funds" is defined as "any source the lawfully provides funds to or on behalf of a renter or buyer of housing, including any assistance, benefit, or subsidy program, whether such program is administered by a governmental or nongovernmental entity."  Va. Code § 36-96.1:1.

29.     Here, despite paying for their internet with the support of nongovernmental and governmental sources, Plaintiffs Blanco, Martinez, and Cruz and others like them are now forced to surrender those benefits and pay a $90-per-month fee as if they were not eligible for the

assistance in the first place. This has a direct and disparate impact on them that violates the VFHL's clear prohibitions on source-of-funds discrimination.

30.     Making matters worse, while forcing tenants to give up their subsidized internet, the Landlord Defendants have failed to provide even the higher-priced internet they promised, resulting in tenants like Plaintiff Cruz having no access to the internet for weeks at a time, while only receiving access to cable just last month.

31.     Defendants imposed the Media Fee despite knowing that numerous tenants were receiving subsidized internet and would now be forced to pay hundreds more per year for the same services. They did so solely for their pecuniary gain, without regard to this known harm to their low-income tenants.

### *Defendants' Retaliation Against Plaintiffs and their Co-tenants*

32.     Faced with the previously undisclosed $90-per-month fee for services that they did not need and were able to receive from alternative sources at a much lower cost, soon after the announced fee, Plaintiffs and other tenants at Manor/Manor East Apartments started to organize and petition Defendants to eliminate the Media Fee or make it optional.

33.     Specifically, between May and July of 2023, New Virginia Majority ("NVM"), a grassroots organization that assists working-class communities of color in advocating for their rights, gathered signatures on a petition asking Defendants to remove the fee or make it optional.

34.     Coinciding with the petition efforts, NVM also organized a tenant's organization at Manor/Manor East Apartments, which all the named Plaintiffs except Johana Martinez joined.

35.     Ultimately, over 110 tenants, including Plaintiffs Hernandez, Rojas, and Cruz, signed the NVM petition, which representatives of the tenant's organization delivered to Defendants on July 28, 2023, while requesting a meeting with Westminster Pillar Management.

36.     The tenant organization also sent a copy of the petition to the corporate headquarters for Westminster Pillar Management in August 2023.

37.     In response to the petition, Defendants refused to alter or eliminate the Media Fee and asked NVM to provide a list of all complaining tenants, in an obvious attempt to identify the tenants so that Defendants could retaliate.

38.     Indeed, shortly after the tenant organization submitted the petition to Defendants, Defendants engaged in a pattern of retaliatory conduct against those known or believed to be part of the tenant's organization and/or to have signed the petition.

39.     For example, when a group of tenants from the organization attempted to speak with employees of Westminster Pillar Management, the employees chased the tenants out of the management office and threatened to call the police.

40.     Additionally, shortly after receiving a surprise non-renewal notice in April 2024, Plaintiff Lazaro Hernandez brought a tenant record request to the management office pursuant to the VLTA to determine whether he had failed to make payments or what other reasons there might be for Defendants' decision not to renew his lease.  In response, Defendants' agents and employees accused him of being part of the tenant's organization and told him that tenants who worked with NVM or any "lawyer" could not stay at the Manor/Manor East Apartments.  The property manager also told Mr. Hernandez that anyone involved in this lawsuit would receive a notice to vacate their apartment.

41.     Defendants had knowledge of Mr. Hernandez's involvement in the tenant's organization and petition efforts prior to issuing a non-renewal notice against him.  Mr. Hernandez has been a vocal supporter of the tenant's organization and has encouraged others to speak out against the Media Fee.  In return, he has now been told to leave his apartment of many years.

42.     Likewise, Plaintiff Maria Rojas received a non-renewal notice dated May 6, 2024, after advocating publicly against the Media Fee in an interview with Telemundo in October 2023 and at a Board of Supervisors hearing in December 2023.  She also served on the leadership committee for the tenant's organization since at least October 2023.  Defendants therefore had direct knowledge of Ms. Rojas's participation in the tenant's organization and efforts to combat the discriminatory Media Fee prior to deciding not to renew her lease for no reason.

43.     Plaintiffs Hernandez and Rojas have not done anything to violate their respective leases or cause Defendants to lawfully seek non-renewal of those leases.  Indeed, they have lived in the Manor/Manor East Apartments for years without any issues.  They non-renewal only once they joined the tenant's organization and advocated for eliminating or amending the Media Fee to prevent its unfair and discriminatory effects.

44.     Defendants were aware of Plaintiffs' involvement in the tenant's organization and their efforts to prevent Defendants' discrimination prior to taking action to evict or prevent Plaintiffs from staying in their apartments.

45.     The above are not the only examples of retaliation by Defendants, either.  Other tenants have also reported retaliatory conduct, including the refusal by Defendants' agents and employees to sign off on necessary applications for rental assistance because the tenants are involved in the tenant organization as the reason for that refusal.  And Defendants' agents and employees have repeatedly harassed tenants believed or known to be part of the tenant's organization.

46.     Many tenants at the Manor/Manor East Apartments have decided not to be named in this lawsuit to avoid further retaliation from Defendants, confirming that Defendants' conduct has had a direct chilling effect on the exercise of the tenants' rights.

47. Defendants' conduct has caused significant harm to Plaintiffs and the putative class members, including: emotional distress from the retaliation and threatened loss of housing for them and their families; the stress and costs of trying to locate alternative housing while facing impending eviction or the non-renewal of their leases; and stress and financial costs of having to pay additional fees that were for years never required while on limited income; the loss of subsidized assistance benefits that they had previously enjoyed; and the lost value of the equipment and services promised to them under the terms of their lease agreements.

**COUNT ONE:**
**VIOLATION OF VLTA, Va. Code § 55.1-1222**
**(Class and Individual Claim by Plaintiffs against the Landlord Defendants)**

48. Plaintiffs incorporate each of the preceding allegations.

49. Under Federal Rule of Civil Procedure 23, Plaintiffs bring this claim on behalf of the following class of which they are each a putative class member:

> All persons: (1) who were or are tenants of the Landlord Defendants (2) at any time that the Landlord Defendants required payment of a "Media Fee," as described in the Complaint.

50. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class members' names and addresses can be identified through Defendants' and third-parties' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice

51. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the Landlord Defendants are subject to the VLTA; (2) whether the Landlord

Defendants violated Va. Code § 55.1-1222 by demanding and accepting payment from tenants for cable services when they were not themselves the providers of the service and also when they were profiting of off the services; and (3) the appropriate amount of damages for the Landlord Defendants' conduct.

52. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

53. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate class representatives because their interests coincide with, and are not antagonistic to, the putative class members' interests. They have retained experienced and competent counsel; they intend to continue to prosecute the action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

54. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by

Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

55.     The Landlord Defendants violated Va. Code § 55.1-1222 by demanding and accepting payment for a cable television service when they were not themselves the providers of the service.

56.     Under the terms of the Media Service and Amenity Addendum that imposed the Media Fee, the cable television services are explicitly provided by "Service Providers," which is defined by the Addendum as "one or more third-party service providers at the Property."

57.     By definition, the Service Providers, including the providers of the cable television services, are not the Landlord Defendants but third parties.

58.     The Landlord Defendants' demand for and collection of the Media Fee in return for cable television services that the Landlord Defendants do not themselves provide is therefore a violation of the VLTA.

59.     The Landlord Defendants have further violated Va. Code § 55.1-1222 by receiving a "fee, charge, or other thing of value" from the third-party provider of the cable television services in exchange for giving their tenants access to the provider's services. The Landlord Defendants received a thing of value in the form of discounted charges that caused the value of the Media Fee to exceed the value of the actual services provided, thus providing a profit to the Landlord Defendants of thousands, if not hundreds of thousands, of dollars per year. Upon information and belief, the Landlord Defendants knowingly agreed upon and charged a Media Fee that exceeded the costs of the services provided by the third-party provider such that the Landlord Defendants and provider would be able to mutually profit, in that the third-party provider would receive

guaranteed income from hundreds of households while the Landlord Defendants retained significant excess profits.

60.     Due to the Landlord Defendants' violations of the VLTA, Plaintiffs are entitled, individually and on behalf of the class, to their damages under Va. Code § 55.1-1259, including, at a minimum, the Media Fee payments they have made thus far and will make during the pendency of this lawsuit.  They are also entitled to an injunction enjoining the Landlord Defendants from imposing or collecting the Media Fee into the future unless and until they become the direct providers of the cable television services.

**COUNT TWO:**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiffs against the Landlord Defendants)**

61.     Plaintiffs incorporate each of the preceding allegations.

62.     Under Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of the following class of which they are each a putative class member:

> All persons who: (1) executed a lease with the Landlord Defendants under which they (2) paid $90 a month to the Landlord Defendants for "Standard Amenities."

63.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical.  The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

64.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the Landlord Defendants misrepresented to Plaintiffs and the putative class

members in their respective lease agreements that they would provide cable and internet services in return for the Media Fee without disclosing that the Landlord Defendants were also profiting off of the Fee; (2) whether the Landlord Defendants' violations were willful; and (3) the appropriate amount of damages for the Landlord Defendants' violations.

65. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

66. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate class representatives because their interests coincide with, and are not antagonistic to, the putative class members' interests. They have retained experienced and competent counsel; they intend to continue to prosecute this action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

67. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by

Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

68.     The Landlord Defendants represented in their lease agreements with Plaintiff Cruz and the putative class members that they would provide the "Standard Amenities" in return for a $90-per-month fee to cover those services.

69.     Upon information and belief, the $90 fee did not in fact only cover the Services, but also provided a profit to the Landlord Defendants that they did not disclose to Plaintiffs and the putative class members.

70.     The Landlord Defendants intentionally omitted this fact from the lease agreements because they knew that such a practice is unlawful, and they wanted to conceal their violations of the VLTA.

71.     Had the Landlord Defendants disclosed the profits they were receiving from the Media Fee in return for allowing third-party providers to provide those services, Plaintiffs and the putative class members would not have agreed to pay the Media Fee in the amount charged under their leases, which they believed at the time was solely to pay for the actual costs of the internet and cable services being provided.

72.     The Landlord Defendants have thus violated Va. Code § 59.1-200 by, at a minimum, using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction, § 59.1-200(14).

73.     The Landlord Defendants' violations were willful. The Landlord Defendants knew at the time they imposed the Media Fee that they stood to gain considerable profits from charging and collecting the fee in return for making the cable and internet services provided by their chosen

third-party providers mandatory, while the providers charged them far less than the Media Fee each month to provide those services. The Landlord Defendants also wanted to deliberately conceal the scheme, as they knew it violated the VLTA to profit from the cable television services they now required each tenant to purchase.

74. Plaintiffs and the putative class members are thus entitled to damages for each month in which the Landlord Defendants charged and collected the Media Fee, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if the Landlord Defendants' conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if the Landlord Defendants' conduct was willful. Va. Code § 59.1-204.

75. Plaintiffs and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

**COUNT THREE:**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiffs Blanco, Martinez, and Cruz against the Landlord Defendants)**

76. Plaintiffs incorporate each of the preceding allegations.

77. Under Federal Rule of Civil Procedure 23, Plaintiffs Zulma Blanco, Johana Martinez, and Arlen Cruz brings this action on behalf of the following class of which they are each a putative class member:

> All persons who: (1) executed a lease with the Landlord Defendants that included a "Media Service and Amenity Addendum" and (2) either (a) did not receive the "Standard Amenities," in whole in part, for any period or (b) did not receive any equipment or devices to use the Standard Amenities, in whole or in part, for any period.

78. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class

members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

79.  **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the Landlord Defendants misrepresented to Plaintiffs Blanco, Martinez, and Cruz and the putative class members in their respective lease agreements that they would provide cable and internet services and/or equipment and devices to use those services in return for the Media Fee that they then did not in fact provide; (2) whether the Landlord Defendants' conduct was willful; and (3) the appropriate amount of damages for the Landlord Defendants' violations.

80.  **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs Blanco's, Martinez, and Cruz claims are typical of the claims of each putative class member.  In addition, they are entitled to relief under the same causes of action as the other putative class members.  All claims are based on the same facts and legal theories.

81.  **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs Blanco, Martinez, and Cruz are adequate class representatives because their interests coincide with, and are not antagonistic to, the putative class members' interests.  They have retained experienced and competent counsel; they intend to continue to prosecute this action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

82.  **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action

is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

83.     The Landlord Defendants represented in their lease agreements and other communications with Plaintiffs Blanco, Martinez, and Cruz and the putative class members that they would provide specific "Standard Amenities," including the cable and internet, and/or that they would provide the equipment and devices needed for the tenants to use the Standard Amenities, including "personal computers, laptops, tablets, mobile phones and television sets."

84.     Despite charging and collecting a $90 Media Fee for the Standard Amenities and the necessary equipment and devices since at least November 2023, the Landlord Defendants failed to provide all the amenities, equipment, and devices to Plaintiffs Blanco, Martinez, and Cruz and the putative class members for each month in which they charged and collected the Fee.

85.     For example, Plaintiff Cruz did not receive a cable modem box until May 2024, despite paying $90 a month for the Standard Amenities since at least November 2023. She also lost internet access in February 2024 because the Landlord Defendants failed to pay for it despite charging her.

86.     Plaintiffs Blanco, Martinez, and Cruz have also still not received any of the promised equipment and devices to use the Standard Amenities, including "personal computers, laptops, tablets, mobile phones and television sets," despite the Landlord Defendants' representations that they would provide such equipment and devices in return for the Media Fee.

87.     At the time the Landlord Defendants represented that they would provide the Standard Amenities and/or the equipment and devices to use those amenities, they knew that they would not provide those services, equipment, or devices, as they did not have possession of the necessary equipment, devices, and infrastructure to implement the services in each dwelling unit or to provide the promised equipment and devices.

88.     Plaintiffs Blanco, Martinez, and Cruz and the putative class members relied on the Landlord Defendants' representations regarding the services, equipment, and devices that would be provided when agreeing to the lease terms.  They would not have agreed to pay $90 per month in return for fewer than all the promised services or the equipment and devices to use those services, as they understood the $90 fee was precisely to pay for those services and the equipment and devices needed to use them.

89.     The Landlord Defendants have thus violated Va. Code § 59.1-200 by, at a minimum: (1) advertising services with intent not to sell them upon the terms advertised, § 59.1-200(8); (2) misrepresenting that services have been performed or parts installed, § 59.1-200(10); and (3) using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction, § 59.1-200(14).

90.     The Landlord Defendants' violations were willful.  The Landlord Defendants knew at the time they imposed the Media Fee and represented that they would provide the Standard Amenities, as well as the equipment and devices needed to use those amenities, that they did not

have the equipment and infrastructure necessary to provide the promised services, equipment, and devices to all dwelling units. They nonetheless chose to impose and start collecting the Media Fee under the promise that they would provide the Standard Amenities and/or the devices and equipment to use them prior to having all the necessary equipment, devices, and infrastructure to fulfill their representations. They did so for their own pecuniary gain.

91.     Plaintiffs Blanco, Martinez, and Cruz and the putative class members are thus entitled to damages for each month in which the Landlord Defendants did not provide the promised Standard Amenities and/or the promised equipment and devices needed to use those amenities, either in whole or in part, as they represented, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if the Landlord Defendants' conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if the Landlord Defendants' conduct was willful. Va. Code § 59.1-204.

92.     Plaintiffs Blanco, Martinez, and Cruz and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

**COUNT FOUR:**
**VIOLATION OF VFHL, Va. Code § 36-96.3**
**(Class and Individual Claim by Plaintiffs Blanco, Martinez, and Cruz against All Defendants)**

93.     Plaintiffs incorporate each of the preceding allegations.

94.     Under Federal Rule of Civil Procedure 23, Plaintiff Zulma Blanco, Johana Martinez, and Arlen Cruz bring this claim on behalf of the following class of which they are putative class members:

> All persons: (1) who were or are tenants of the Landlord Defendants; (2) at any time that the Landlord Defendants required payment of a "Media Fee," as described in the Complaint; and (3) were receiving subsidized internet services from a lawful source at the time the Landlord Defendants imposed the Media Fee.

95.     **Numerosity**. **Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class members' names and addresses can be identified through Defendants' and third-parties' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice

96.     **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendants are subject to the VFHL; (2) whether Defendants violated Va. Code § 36-96.3 by imposing the Media Fee in a manner that discriminated against tenants who paid for internet through subsidized programs; and (3) the appropriate amount of actual and punitive damages for Defendants' conduct.

97.     **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Plaintiffs Blanco's, Martinez's, and Cruz's claims are typical of the claims of each putative class member. In addition, Plaintiffs Blanco, Martinez, and Cruz are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

98.     **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4).** Plaintiffs Blanco, Martinez, and Cruz are adequate class representatives because their interests coincide with, and are not antagonistic to, the putative class members' interests. They have retained experienced and competent counsel; they intend to continue to prosecute the action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

99.     **Superiority**. **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

100.     Defendants violated Va. Code § 36-96.3 by discriminating against Plaintiffs Blanco, Martinez, and Cruz and the putative class members in the terms, conditions, or privileges of the rental of their respective dwellings based on their source of funds.

101.     Plaintiffs Blanco, Martinez, and Cruz and the putative class members were each paying for internet using subsidized programs from lawful governmental and nongovernmental sources.

102.     Defendants' mandatory Media Fee has a disparate impact on Plaintiffs Blanco, Martinez, and Cruz and the putative class members by depriving them of the source of funds used to subsidize their internet services prior to the Media Fee and forcing them to pay hundreds more per year for the same services.

103.   Defendants' violations of the VFHL were willful.   Defendants were aware that Plaintiffs were low-income and relied on assistance to pay for utilities, including the internet. Despite this knowledge, they chose to impose a mandatory fee at a much higher mark-up to the actual cost of the services to both Defendants and their tenants all for their own pecuniary gain.

104.   Due to Defendants' violations of the VFHL, Plaintiffs Blanco, Martinez, and Cruz are entitled, individually and on behalf of the class, to actual and punitive damages, attorneys' fees, and costs under Va. Code § 36-96.18(C).   They are also entitled to an injunction enjoining Defendants from imposing or collecting the Media Fee in a manner that discriminates against individuals based on their source of funds.

**COUNT FIVE:**
**VIOLATION OF VFHL, Va. Code § 36-96.5**
**(Class and Individual Claim by Plaintiffs Rojas and Hernandez against All Defendants)**

105.   Plaintiffs incorporate each of the preceding allegations.

106.   Under Federal Rule of Civil Procedure 23, Plaintiffs Maria Rojas and Lazaro Hernandez bring this action on behalf of the following class of which they are putative class members:

> All persons who: (1) were or are tenants of the Landlord Defendants; (2) petitioned for the elimination of the Media Fee or joined the tenant's organization; (3) received a non-renewal notice or notice to vacate since the submission of the petition; and (4) were not in default at the time they received the notice.

107.   **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical.   The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

108.   **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class

members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendants are subject to the VFHL; (2) whether Defendants violated Va. Code § 36-96.5 by coercing, intimidating, threatening, or interfering with the putative class members' exercise of, or aide to others in the exercise of, their rights to be free from source-of-income discrimination, including by signing the petition and/or joining the tenant's organization advocating for the elimination of the Media Fee; and (3) the appropriate amount of actual and punitive damages for Defendants' conduct.

109. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs Rojas's and Hernandez's claims are typical of the claims of each putative class member. In addition, they are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

110. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs Rojas and Hernandez are adequate class representatives because their interests coincide with, and are not antagonistic to, the putative class members' interests. They have retained experienced and competent counsel; they intend to continue to prosecute the action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

111. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the

wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

112. Defendants violated Va. Code § 36-96.5 by intimidating, coercing, threatening, and interfering with Plaintiffs Rojas and Hernandez's and the putative class members' attempts to exercise or enjoy their right to be free from source-of-funds discrimination, or to aide others in the exercise or enjoyment of that right, including by, at a minimum, joining the tenant's organization and/or signing a petition to eliminate the Media Fee or render it optional so that those on subsidized internet programs would not be required to pay for services they were able to obtain for much lower cost with subsidized funds.

113. Defendants had knowledge of Plaintiffs Rojas and Hernandez's and the putative class members' participation in efforts to organize and petition for changes to the Media Fee that would prevent its discriminatory effect.

114. Defendants used this knowledge and their beliefs as to which Plaintiffs Rojas and Hernandez and putative class members were involved in the organizing and petitioning process to engage in a coordinated effort to remove those involved from their apartments using non-renewal notices and other forms of harassment and hindrances designed to intimidate and interfere with Plaintiffs' and putative class members' advocacy efforts.

115. Defendants' violations of the VFHL were willful. Defendants intentionally engaged in conduct designed to intimidate Plaintiffs Rojas and Hernandez and the class members so that they would either halt their organizing efforts or be forced out of their apartments against their will. Such efforts were specifically designed to make an example of Plaintiffs and the class members so that others would not join them in their attempts to organize and advocate against Defendants' discriminatory conduct.

116. Due to Defendants' violations of the VFHL, Plaintiffs Rojas and Hernandez are entitled, individually and on behalf of the class, to actual and punitive damages, attorneys' fees, and costs under Va. Code § 36-96.18(C). They are also entitled to an injunction enjoining Defendants from evicting or issuing non-renewal notices based on the knowledge or belief that a tenant is involved with advocating for the elimination of the Media Fee and without an independent, nonretaliatory reason for doing so.

**COUNT SIX:**
**BREACH OF CONTRACT**
**(Class and Individual Claim by Plaintiffs Blanco, Martinez, and Cruz against the Landlord Defendants)**

117. Plaintiffs incorporate each of the preceding allegations.

118. Under Federal Rule of Civil Procedure 23, Plaintiffs Zulma Blanco, Johana Martinez, and Arlen Cruz bring this action on behalf of the following class of which they are putative class members:

> All persons who: (1) executed a lease with the Landlord Defendants that (2) included a provision in the Media Service and Amenity Addendum that requires the "Lessor" to provide "necessary personal reception devices and equipment needed to use the Standard Amenities, such as personal computers, laptops, tablets, mobile phones and television sets"; and (3) were current on payment of the "Media Fee" at the time the Landlord Defendants failed to provide the promised equipment.

119. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class

members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

120. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the Landlord Defendants breached the terms of the leases with the putative class members by failing to provide the promised personal reception devices and equipment; (2) whether the Landlord Defendants should be required to perform those obligations under the contract or, alternatively, the appropriate amount of damages for their breach.

121. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs Blanco, Martinez, and Cruz's claims are typical of the claims of each putative class member. In addition, Plaintiffs Blanco, Martinez, and Cruz are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

122. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs Blanco, Martinez, and Cruz are an adequate class representative because their interests coincide with, and are not antagonistic to, the putative class members' interests. They have retained experienced and competent counsel; they intend to continue to prosecute this action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

123. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The

damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

124.     The Landlord Defendants have executed valid and binding lease agreements with Plaintiffs Blanco, Martinez, and Cruz and the putative class members that include the following Equipment Provision in a "Media Service and Amenity Addendum":

> Lessor is responsible for obtaining all necessary personal reception devices and equipment needed to use the Standard Amenities, such as personal computers, laptops, tablets, mobile phones and television sets. Lessor acknowledges that the Lessee does not provide any of this equipment.

125.     "Standard Amenities" is defined by the lease as: (1) "High speed Internet Service in the lease unit ('HSIA')"; (2) "One wireless cable modem or router as needed for wireless use of the HSIA within the leased unit": (3) "Cable television service consisting of approximately 130 channels with HBO available at 1 outlet(s) in the leased unit"; and (4) "1 Set Top Box(es) as needed for the cable television service."

126.     To date, the Landlord Defendants, who are each the "Lessor" of their respective leases, have not provided any personal reception devices or equipment needed to use the Standard Amenities, including personal computers, laptops, tablets, mobile phones and television sets.

127. The Landlord Defendants are thus in breach of the terms of the putative class members' lease agreements.

128. Plaintiffs Blanco, Martinez, and Cruz and the putative class members are entitled to specific performance of the lease agreements, as damages are not an adequate remedy at law. Damages will not allow the class members to enjoy the benefits promised under the lease, which require the Landlord Defendants to provide the equipment necessary to use the promised Standard Amenities for which they are required to pay $90 per month. Implied in this obligation is that the equipment will be in good working order such that Plaintiffs Blanco, Martinez, and Cruz and the putative class members can use the Standard Amenities, which no amount of damages can compensate. Plaintiffs Blanco, Martinez, and Cruz and the putative class members are thus entitled to specific performance of this provision.

129. Alternatively, Plaintiffs Blanco, Martinez, and Cruz and the putative class members are entitled to damages for the period in which they have been deprived of the promised devices and equipment to use the Standard Amenities while they were required to pay for the amenities.

**COUNT SEVEN:**
**BREACH OF CONTRACT OR, ALTERNATIVELY, UNJUST ENRICHMENT**
**(Class and Individual Claim by Plaintiff Cruz against the Landlord Defendants)**

130. Plaintiffs incorporate each of the preceding allegations.

131. Under Federal Rule of Civil Procedure 23, Plaintiff Arlen Cruz brings this action on behalf of the following class of which she is a putative class member:

> All persons who: (1) executed a lease with the Landlord Defendants under which they (2) paid $90 a month to the Landlord Defendants for "Standard Amenities", but (3) did not receive the "Standard Amenities," in whole in part, for the months in which they paid for them.

132. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class

members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

133. **Predominance of Common Questions of Law and Fact.** **Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the Landlord Defendants breached the terms of the leases with the putative class members by failing to provide the promised services; (2) the appropriate amount of damages for the Landlord Defendants' breach.

134. **Typicality.** **Fed. R. Civ. P. 23(a)(3).** Plaintiff Cruz's claims are typical of the claims of each putative class member. In addition, Plaintiff Cruz is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

135. **Adequacy of Representation.** **Fed. R. Civ. P. 23(a)(4).** Plaintiff Cruz is an adequate class representative because her interests coincide with, and are not antagonistic to, the putative class members' interests. She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

136. **Superiority.** **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome

and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

137.    The Landlord Defendants have executed valid and binding lease agreements with Plaintiff Cruz and the putative class members that obligate them to provide specific "Standard Amenities" including: (1) "High speed Internet Service in the lease unit ('HSIA')"; (2) "One wireless cable modem or router as needed for wireless use of the HSIA within the leased unit": (3) "Cable television service consisting of approximately 130 channels with HBO available at 1 outlet(s) in the leased unit"; and (4) "1 Set Top Box(es) as needed for the cable television service."

138.    Despite charging and collecting a $90 Media Fee for the Standard Amenities since at least November 2023, the Landlord Defendants failed to provide all of those Amenities to Plaintiff Cruz and the putative class members for each month in which they charged and collected the Fee.

139.    For example, Plaintiff Cruz did not receive a cable modem box until May 2024, despite paying $90 a month for the Standard Amenities since at least November 2023. She also lost internet access in February 2024 because the Landlord Defendants failed to pay for it despite charging her.

140.    The Landlord Defendants have thus breached the terms of Plaintiff Cruz's and the putative class members' lease agreements.

141.    Plaintiff Cruz and the putative class members have been harmed by the Landlord Defendants' breach, including by being deprived of the value of the services they were promised.

142.    Plaintiff Cruz and the putative class members are thus entitled to damages for the period in which the Landlord Defendants did not provide the promised Standard Amenities, either in whole or in part, while they were required to pay for the Amenities.

143.    In the alternative, the Landlord Defendants are liable to Plaintiff Cruz and the putative class members for unjust enrichment for all amounts paid to them for services that the Landlord Defendants did not provide in return.  Plaintiff Cruz and the class members conferred a known benefit on the Landlord Defendants in the form of the $90-per-month Media Fee, which the Landlord Defendants accepted and retained while not providing the services allegedly purchased by the Fee.  This constitutes unjust enrichment for which Plaintiff Cruz and the putative class members are entitled to restitution of all amounts unjustly earned by the Landlord Defendants.


WHEREFORE, Plaintiffs demand judgment for actual, statutory, and punitive damages against Defendants; injunctive relief; their attorneys' fees and costs; pre- and post-judgment interest at the legal rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFFS**

By: _____/s/ Kristi C. Kelly_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiffs*